OPINION
{¶ 1} Appellant, Christopher D. Charlton, appeals from the judgment entry of the Trumbull County Court, Eastern District. He is appealing his conviction for aggravated menacing following a jury trial. On review, we affirm the judgment entry of the trial court.
 {¶ 2} On February 23, 2006, Charlton had been placed in a holding cell maintained by the Trumbull County Court, Eastern District. He had just been sentenced *Page 2 
by the court on another matter and was awaiting transport to the county jail. While in the holding cell, Charlton became extremely agitated, loud, and profane about the proceedings in court. A short time later, Keith Gunther, his probation officer for the previous six months, entered the holding cell, and a heated exchange occurred between Charlton and Gunther.
 {¶ 3} Gunther had entered the holding cell, not to talk to Charlton, but to discuss some matters regarding fines and costs with two other individuals also being held in the holding cell. In all, there were six to ten people in the holding cell at that time. After Gunther entered the holding cell, Charlton, whose hands were handcuffed in front of his body, stood up and confronted Gunther, asking him for assistance with his attorney. When Gunther did not respond to his inquiry, Charlton became more irate with Gunther and accused him of being instrumental in allowing his ex-girlfriend to enter his residence and retrieve items of personal property beyond what she was entitled to take. Charlton called Gunther a "fucking thief." In addition, Charlton advanced forward in close proximity to Gunther, raising his hands and making additional threats. Gunther subdued Charlton with the assistance of other officers in the area and sat him back down.
 {¶ 4} Charlton was charged with aggravated menacing, a misdemeanor of the first degree, and a violation of R.C. 2903.21(A). He entered a plea of not guilty and the matter proceeded to a jury trial. The jury returned a verdict of guilty. Charlton was sentenced on May 25, 2006. The trial court imposed a jail sentence of 180 days, suspending all the days, and a fine of $ 500, suspending $ 300. Probation was also imposed for a two-year period. Charlton timely appealed his conviction to this court, raising the following assignment of error: *Page 3 
 {¶ 5} "The appellant's conviction for aggravated menacing is against the manifest weight of the evidence."
 {¶ 6} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has provided the following guidance for reviewing courts:
 {¶ 7} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[1]
 {¶ 8} The weight to be given to the evidence and the credibility of the witnesses are primarily matters for the jury to decide.[2]
 {¶ 9} R.C. 2903.21(A) states the offense of aggravated menacing and provides as follows:
 {¶ 10} "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." *Page 4 
 {¶ 11} The 1974 committee comment to this statute states, in pertinent part, as follows:
 {¶ 12} "Neither aggravated menacing nor menacing requires that the offender be able to carry out his threat or even believe himself capable of carrying it out. It is sufficient if the offender knowingly causes the victim to believe the offender will carry his threat into execution. The rationale for this is that regardless of whether the offender is bluffing or in earnest the victim may be impelled to violence to counter what he believes to be a real threat. If the victim of a threat is not in fact intimidated, the offender's conduct would constitute attempted menacing if his purpose was to intimidate or he knew that his conduct would probably intimidate."[3]
 {¶ 13} Therefore, the gist of the offense is the victim's reasonable belief that serious physical harm was about to befall him, not whether the offender was capable of carrying out the threat or believing that he was capable of carrying it out.[4]
 {¶ 14} A person satisfies the element of "knowingly" in the aggravated menacing statute "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[5] *Page 5 
 {¶ 15} Three witnesses testified for the prosecution. Gunther testified that when he first went into the holding cell, Charlton was yelling and swearing at him and, before long, rose up from a seated position and moved at him rapidly. Gunther was concerned that the cuffs on Charlton's wrists would be used as a weapon on his face. When asked by the prosecutor whether he believed that Charlton was going to cause him serious physical harm, Gunther answered in the affirmative. Another person in the holding cell testified that Charlton was extremely angry and upset and came at Gunther with his hands raised. A police officer on duty near the holding cell also testified that Charlton came at Gunther with his hands raised as if to attack Gunther.
 {¶ 16} Two witnesses testified for the defense. Another holding cell inmate testified that he saw Gunther restrain Charlton, but he could not see whether Charlton first made an aggressive move toward Gunther. Charlton testified that Gunther punched him after Charlton called him a "fucking thief," that Gunther was the aggressor, and that he did not raise his hands as if to attack Gunther.
 {¶ 17} In this court, Charlton argues that there was no genuine threat to Gunther, that due to his size advantage over Charlton and his training in defensive tactics, Gunther could not reasonably have believed that Charlton's advance toward him could have resulted in serious physical harm. Charlton contends that Gunther exacted revenge on Charlton because Charlton called him a "fucking thief."
 {¶ 18} However, witnesses for the state consistently testified that Charlton was extremely upset when he was in the holding cell, that he directed his venom toward Gunther, and that he rose up off his seat and came at Gunther with his hands raised. *Page 6 
Gunther himself testified that he believed Charlton was about to do him serious physical harm.
 {¶ 19} Thus, the jury, hearing all the testimony and evidence presented by the state, and considering the credibility of the witnesses, could well have concluded that Charlton was in an agitated state, that he directed his anger toward Gunther, and that he moved aggressively toward Gunther as if to inflict serious physical harm. The fact that Charlton was unsuccessful in his efforts does not vitiate the reasonable belief held by Gunther that Charlton was about to cause him serious physical harm. From the standpoint of the manifest weight of the evidence, the jury did not lose its way or commit a miscarriage of justice in finding Charlton guilty of aggravated menacing.
 {¶ 20} The assignment of error is without merit.
 {¶ 21} The judgment entry of the trial court is affirmed.
DIANE V. GRENDELL, J., MARY JANE TRAPP, J., concur.
[1] (Citations omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380,387. See, also, State v. Thomas, 11th Dist. No. 2004-L-176,2005-Ohio-6570, at ¶ 27-29.
[2] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[3] See, also, State v. Padgett, 2d Dist. No. 19590, 2003-Ohio-6242, at ¶ 83.
[4] State v. Schwartz (1991), 77 Ohio App.3d 484, 486.
[5] R.C. 2901.22(B). *Page 1